# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAREHOLDER REPRESENTATIVE SERVICES LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 19-1312-RGA ) |
| MEDIDATA SOLUTIONS, INC., | ) ) ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Pending before the Court is a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Medidata Solutions, Inc. ("Medidata" or "Defendant") seeking dismissal of Plaintiff Shareholder Representative Services LLC's ("Plaintiff") Complaint alleging breach of contract, unjust enrichment and breach of the implied covenant of good faith and fair dealing (the "Motion"). (D.I. 9) For the reasons that follow, the Court recommends that the Motion be GRANTED-IN-PART and DENIED-IN-PART.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed its Complaint on July 15, 2019. (D.I. 2) Defendant filed the instant Motion on August 23, 2019, (D.I. 9), and the Motion was fully briefed as of September 23, 2019, (D.I. 22). On October 3, 2019, the Motion was referred to the Court by United States District Judge Richard G. Andrews. (D.I. 25) The Court held oral argument on the Motion on February 19, 2020.

### B. Factual Background

In 2017, Defendant acquired CHITA, Inc. ("CHITA") in exchange for an Earnout Purchase Price ("Earnout Purchase Price") payable to CHITA's former equityholders (the

"Equityholders"); the Earnout Purchase Price had the following components: (1) an initial payment of $9 million dollars; (2) an amount in cash equal to $4 million dollars; plus (3) contingent consideration up to $15 million, to be paid out on a quarterly basis over a period of 27 months. (D.I. 2 at ¶¶ 3, 7-14; D.I. 11, ex. 1 at § 1.2.1(a)) The amount of the contingent consideration was to be based on a calculation flowing from revenues that Defendant generated from the sale and licensing of the CHITA-regulated content management ("RCM") software solution product. (D.I. 2 at ¶¶ 8, 12-13) Plaintiff alleges that Defendant failed to take commercially reasonable steps to sell the RCM product and (relatedly) to maximize the Earnout Purchase Price. (*See generally* D.I. 2)

The Court will address any additional relevant facts below in Section II.

## II. DISCUSSION

### A. Legal Standard

In their briefing, the parties dispute the relevant legal standard that applies to the Court's review of this Rule 12(b)(6) motion. In its briefing, Defendant suggested that Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply.[1] (D.I. 10 at 9-12; D.I. 22 at 3 n.2) Rule 9(b) applies when a plaintiff alleges fraud or mistake. Fed. R. Civ. P. 9(b); *see also, e.g.*, *Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*, 868 F. Supp. 2d 333, 341 (D. Del. 2012). Here, although none of Plaintiff's claims include fraud as an element, Defendant argues that Rule 9(b) nevertheless applies because Plaintiff's claims "sound in fraud[.]" (D.I. 10 at 9)

---

[1] During oral argument, Defendant's counsel seemed to walk back its assertion that Rule 9(b) applies here. That said, out of an abundance of caution, the Court addresses the argument below.

2

It is true that there are a few factual allegations in the Complaint that accuse Defendant of making at least one type of intentional misrepresentation. (*See, e.g.*, D.I. 2 at ¶¶ 36, 79) But after reading the Complaint, it is clear to the Court that the crux of the allegations are that Defendant did or did not take certain actions that amount to breach of contract (and not that Defendant committed fraud). (D.I. 20 at 3, 8-12) This is exemplified by the allegations found in the portions of the Complaint setting out Plaintiff's claims for relief. For example, Plaintiff's first claim for relief (asserting breach of the Stock Purchase Agreement, ("SPA")), alleges:

> 56. Medidata breached its obligations under the Stock Purchase Agreement to use commercially reasonable efforts to achieve the full payment of the Earnout Purchase Price, including by not hiring adequate sales or product development personnel, by not devoting resources to the development of necessary enhancements or additional functionality for the CHITA RCM software, by diverting resources to customizing the CHITA RCM software for internal Medidata use, and by not using reasonable efforts to achieve the requirements of the 2017 Earnout Operating Plan or the CHITA Business Plan.

(D.I. 2 at ¶ 56) Similarly, Plaintiff's second claim for relief (asserting breach of the Earnout Agreement, ("EEA")), alleges that "Medidata breached its obligations under the Earnout Agreement, including by not devoting the required resources necessary to achieve the full payment of the Earnout Purchase Price." (*Id.* at ¶ 66)[2]

In deciding this Motion, therefore, the Court will simply assess whether Plaintiff's allegations satisfy the pleading standard set out in Federal Rule of Civil Procedure 8(a). This involves a two-part form of analysis. First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal

---

[2] During oral argument, Defendant acknowledged that it had not located any cases from this Circuit in which a court applied Rule 9(b)'s heightened pleading requirements to a breach of contract claim.

conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

**B.     Analysis**

With its Motion, Defendant challenges each of Plaintiff's four claims for relief. The Court will address these claims in turn.

   **1.     Breach of Contract**

Plaintiff's First Claim for Relief alleges breach of the SPA, (D.I. 2 at ¶¶ 49-58), and Plaintiff's Second Claim for Relief alleges breach of the EEA, (*id.* at ¶¶ 59-68). Pursuant to Delaware law, which is at issue here, a plaintiff states a breach of contract claim by alleging facts that support the following elements: (1) the existence of a contract; (2) the breach of an obligation imposed by that contract; and (3) resultant damages to the plaintiff. *Pharm. Corp. of Am. v. Askari*, C. A. No. 16-1123-RGA-MPT, 2018 WL 2108200, at *5 (D. Del. May 7, 2018); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009). Defendant asserts that Plaintiff's breach of contract claims fail because Plaintiff "do[es] not plead *any* facts, much less sufficient facts, to support [its] claims[.]" (D.I. 10 at 9 (certain emphasis in original))[3]

---

[3]     Defendant additionally argues that Plaintiff's allegations are insufficient under Rule 8 because each of the Complaint's key factual allegations as to breach are preceded by the words "upon information and belief." (D.I. 10 at 13-16; D.I. 22 at 3-6) Citing to caselaw from the United States Court of Appeals for the Third Circuit, Defendant argues that such allegations

4

In the Court's view, however, Plaintiff's breach of contract claims set out plausible fact-based allegations. With respect to Plaintiff's claim relating to the SPA, Plaintiff alleges that in the SPA, Defendant "committed to use commercially reasonable efforts to achieve the full payment of the Earnout Purchase Price." (D.I. 2 at ¶ 55) Plaintiff further alleges that Defendant "breached" that obligation "including by not hiring adequate sales or product development personnel, by not devoting resources to the development of necessary enhancements or

---

would only pass muster if Plaintiff could show that "the requisite factual information is peculiarly within the defendant's knowledge or control[,]" which Plaintiff's Complaint fails to do. (D.I. 10 at 12-14 (internal quotation marks and citation omitted)); *see also McDermott v. Clondalkin Grp.*, 649 F. App'x 263, 267-68 (3d Cir. 2016).

As an initial matter, the Court questions whether Plaintiff even needed to invoke this "information and belief" phraseology. This is not a case, for example, where Rule 9(b)'s pleading requirements apply and the plaintiff is using this phraseology in order to explain why the Complaint contains a lesser quantum of facts than one might expect to see from a typical complaint that meets Rule 9(b)'s standards. *See, e.g., United States v. Eastwick Coll.*, 657 F. App'x 89, 95 (3d Cir. 2016); *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 432-33 (S.D.N.Y. 2014). And pursuant to Rule 8, all Plaintiff has to do here is make sufficient factual allegations to set out a plausible claim for breach of contract, which it has done, regardless of whether it also included the words "upon information and belief" in those same paragraphs. Put differently, if the phrase "upon information and belief" was stripped altogether from the Complaint, for the reasons set out below, the allegations would set forth plausible facts that (if proven true) could establish breaches of the SPA and EEA.

Moreover, even were Plaintiff—because of its repeated use of this "upon information and belief" phraseology—required to demonstrate that more robust factual information was "peculiarly within the defendant's knowledge or control," the Court would find that the Complaint's allegations can support such a conclusion. To be sure, for at least a portion of the time period at issue in the Complaint, Equityholder Kevin Barrett was Managing Director of Defendant's CHITA business group, (D.I. 2 at ¶ 40), and it is his knowledge that provided the basis for certain of Plaintiff's allegations regarding this time period, (D.I. 20 at 7). So perhaps it could be said that, as to this timeframe, Plaintiff might have a hard time showing that relevant facts regarding breach were "peculiarly within Defendant's knowledge or control." But the Complaint also alleges that at some point in 2018, Defendant relieved Mr. Barrett of these duties, (D.I. 2 at ¶ 40), and that thereafter, the Equityholders were allegedly kept in the dark with respect to development of the RCM product, (*id.* at ¶ 45). For at least this latter period, it *does* seem plausible that the facts at issue regarding breach of contract claims were not readily accessible to Plaintiff (or the Equityholders).

5

additional functionality for the CHITA RCM software, by diverting resources to customizing the CHITA RCM software for internal Medidata use, and by not using reasonable efforts to achieve the requirements of the 2017 Earnout Operating Plan or the CHITA Business Plan." (*Id.* at ¶ 56) And Plaintiff pleads additional facts articulating how it is that Defendant purportedly effectuated each of these alleged contractual breaches. (*Id.* at ¶¶ 26-48) The Complaint thus sets out with some specificity what it is Defendant allegedly did (and did not) do that amounts to the use of less-than-commercially-reasonable efforts.[4]

Similarly, as to Plaintiff's claim relating to the EEA, Plaintiff alleged that Defendant committed to "devote the necessary resources to achieve the Earnout Purchase Price" therein, (*id.* at ¶ 65), and that Defendant breached these obligations by, for example, failing to meet the headcount requirements for full-time sales personnel and full-time product development personnel, and by focusing resources on customizing the RCM software for internal uses, (*id.* at ¶¶ 26, 28, 31). The Complaint thus alleges specific facts supporting a breach of contract claim with respect to the EEA.

For these reasons, the Court recommends that Defendant's Motion be denied with respect to the breach of contract claims.[5]

---

[4] During oral argument, Defendant's counsel suggested that the Complaint is nevertheless wanting because therein, Plaintiff fails to compare (1) Defendant's actions and inaction regarding CHITA to (2) the actions of other entities in the industry, which demonstrate what "typical" or "commercially reasonable" efforts should look like. However, the Court is not persuaded that such additional allegations are *required* in order for a plaintiff to plead a plausible breach of contract claim under these circumstances.

[5] Defendant also appears to assert that Plaintiff cannot sufficiently plead a claim for damages because the EEA includes a dispute resolution provision (one providing that Plaintiff could have submitted a Disputed Earnout Payment Calculation Notice to Defendant within 45 days of each quarterly earnout payment), but that Plaintiff "did not once invoke the EEA's provisions to dispute the payment amounts." (D.I. 10 at 15-16 (citing D.I. 11, ex. 2 at § 7(d));

6

## 2. Unjust Enrichment

Plaintiff's Third Claim for Relief alleges an unjust enrichment claim. (D.I. 2 at ¶¶ 69-75) Unjust enrichment is "an equitable remedy [that] requires: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Moon Express, Inc. v. Intuitive Machs., LLC*, Civil Action No. 16-344-LPS-CJB, 2017 WL 4217335, at *8 (D. Del. Sept. 22, 2017) (internal quotation marks and citations omitted). Defendant argues that Plaintiff's claim for unjust enrichment should be dismissed as duplicative of Plaintiff's claims for breach of contract. (D.I. 10 at 18-19; D.I. 22 at 9)

The conduct underlying Plaintiff's unjust enrichment claim is the same conduct that is alleged to amount to a breach of contract in Plaintiff's First Claim for Relief and Second Claim for Relief. (*See, e.g.*, D.I. 2 at ¶ 71) Plaintiff nevertheless asserts that Rule 8(d)(2) permits it to plead unjust enrichment in the alternative to breach of contract, and that in light of this, its unjust enrichment claim is viable. (D.I. 20 at 15)

As noted above, however, one of the underlying elements of unjust enrichment is that the plaintiff has no other legal remedy for its claim. Accordingly, under Delaware law, a "party

---

D.I. 22 at 6 n.5) This argument is premised on the notion that Plaintiff could have challenged Defendant's efforts to maximize the Earnout Purchase Price pursuant to this provision, did not do so, and thus has now somehow forfeited a claim for damages as to such an alleged breach. (D.I. 10 at 15-16) Yet the dispute resolution provision is, at a minimum, ambiguous as to whether it would have permitted Plaintiff to raise such a challenge pursuant to its terms. Indeed, it seems at least as likely that the provision would be read to have limited Plaintiff to merely challenging Defendant's *calculation* of the earnout payments, nothing more. (*See* D.I. 20 at 7; *see also* D.I. 11, ex. 2 at § 7(a) (noting that, pursuant to the provision, Plaintiff could only challenge whether the "Quarterly Second Earnout Calculation is incorrect" as to the relevant "calculation")) Thus, for this reason, the Court cannot say that Plaintiff's allegations relating to damages are implausible.

cannot seek recovery under an unjust enrichment theory if a contract 'is the measure of [the] plaintiff's right.'" *ID Biomed. Corp. v. TM Techs., Inc.*, Civ.A. No. 13269, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995) (internal citation omitted). Thus, if a plaintiff's pleading makes it uniformly clear that the plaintiff *does* have an alternate remedy at law (in the form of a breach of contract claim), then even under federal pleading standards, the plaintiff would not have sufficiently pleaded that element of an unjust enrichment claim. *See Moon Express*, 2017 WL 4217335, at *9.

That is the case here. Neither party appears to dispute the existence or validity of the SPA and EEA, (*see, e.g.*, D.I. 2 at ¶¶ 7, 9), and, as noted above, Defendant's obligations under these contracts form the basis of Plaintiff's unjust enrichment claim, (*id.* at ¶¶ 71-72). Plaintiff pleaded no "alternative" facts suggesting anything different. And thus, as to Plaintiff's unjust enrichment claim, Plaintiff has not sufficiently pleaded the absence of a remedy provided by law. *See Akula v. Telestax, Inc.*, Civil Action No. 17-1740-CJB, 2018 WL 5004862, at *1 (D. Del. Oct. 11, 2018); *Moon Express*, 2017 WL 4217335, at *9. The Court thus recommends that Defendant's Motion be granted with respect to this claim.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's Fourth Claim for Relief alleges a claim for breach of the implied covenant of good faith and fair dealing. (D.I. 2 at ¶¶ 76-83) A plaintiff alleging such a claim must plead facts establishing a "specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Jeter v. RevolutionWear, Inc.*, C.A. No. 11706-VCG, 2016 WL 3947951, at *6 (Del. Ch. July 19, 2016) (internal quotation marks and citations omitted); *see also Talley v. Christiana Care Health Sys.*, Civil Action No. 17-926-CJB, 2019 WL 5102926, at *13 (D. Del. Oct. 9, 2019). Defendant argues that this claim must be

8

dismissed because the Complaint fails to identify any specific implied contractual obligation and because the claim is thus duplicative of Plaintiff's breach of contract claims. (D.I. 10 at 19-20; D.I. 22 at 8)

Plaintiff argues that it has adequately pleaded this claim because the Complaint establishes that Defendant exercised its discretion with respect to the RCM product in a way that is *impliedly* proscribed by the terms of the agreements at issue. (D.I. 20 at 13-14) The problem with this argument, however, is that no such allegations exist in Plaintiff's Fourth Claim for Relief (or elsewhere in the Complaint). (D.I. 22 at 8)[6] Nowhere in the Fourth Claim for Relief, for example, does Plaintiff allege that the implied contractual obligation at issue is the existence of an implied limit on Defendant's discretionary ability to take actions that might result in fewer sales of the RCM product.

Moreover, Delaware law dictates that if the scope of discretion is specified in a contract, then there is no gap in the contract as to the scope of the discretion, and no reason for the Court to look to the implied covenant of good faith and fair dealing to determine how discretion should be exercised. *See, e.g., Miller v. HCP & Co.*, C.A. No. 2017-0291-SG, 2018 WL 656378, at *11 (Del. Ch. Feb. 1, 2018). Here, it appears that the agreements at issue expressly delineated the limits on Defendant's discretion. (D.I. 22 at 8; *see also, e.g.*, D.I. 11, ex. 2 at § 5 (providing that Defendant has the right to operate the RCM business "in any manner in which [Defendant] deems appropriate in its sole and *good faith* discretion") (emphasis added); *id.*, ex. 1 at § 4.15(a) (providing that Defendant shall "use *commercially reasonable efforts* to achieve the full payment

---

[6] The word "discretion" never actually appears in the Complaint. (*See generally* D.I. 2)

of the Earnout Purchase Price") (emphasis added)) For these reasons, the Court recommends that Defendant's Motion be granted with respect to this claim.[7]

## III. CONCLUSION

The Court recommends that Defendant's Motion be GRANTED-IN-PART and DENIED-IN-PART. More specifically, the Court recommends that the Motion be DENIED as to the breach of contract claims and that it be GRANTED as to the claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing.[8]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

---

[7] By its Motion, Defendant further requests that the Court strike Plaintiff's demand for a jury trial in the Complaint. (D.I. 10 at 20; D.I. 22 at 9-10) Defendant asserts that the parties knowingly, voluntarily and intelligently waived their rights to a jury trial in both the SPA and EEA. (D.I. 10 at 20) It is not clear to the Court, however, that such a request rightly falls within the purview of a motion to dismiss filed pursuant to Rule 12(b)(6). *See, e.g., In re DaimlerChrysler AG Secs. Litig.*, No. Civ.A. 00-993-JJF, 2003 WL 22769051, at *1 (D. Del. Nov. 19, 2003) (granting a motion to strike plaintiff's jury demand, filed pursuant to Federal Rule of Civil Procedure 39(a)(2)). The Court therefore declines to address Defendant's request in connection with this Motion. Absent the parties resolving this conflict on their own, the Defendant may raise this request with the District Court at a later time.

[8] Plaintiff requested leave to amend its Complaint to the extent that the Court grants any portion of Defendant's Motion. (D.I. 20 at 15) The Court recommends that this request be denied with respect to Plaintiff's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing, as the Court is not currently aware of any additional facts that would render such claims non-futile. (D.I. 22 at 10); *see also, e.g., Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) ("[A] court may deny leave to amend [a complaint] when such amendment would be futile.").

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **February 27, 2020** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: February 24, 2020

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE